CASE 88—ACTION BY A. J. ASHER AGAINST C. J. JOHNSON AND OTHERS TO ENFORCE A CONTRACT.—SEPTEMBER 29.

# Asher v. Johnson, &c.

APPEAL FROM WHITLEY CIRCUIT COURT—M. L. JARVIS, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. REVERSED.

LEASE OR LICENSE—DURATION—RIGHTS OF LESSEE.

A writing by which defendants gave plaintiff the right to enter on and take possession of a strip of their land, and construct thereon a tramway, and occupy it therewith for three years, in consideration of a certain amount per year, is a lease; so that under the provisions of Ky. St. 1903, sec. 2295, plaintiff having remained in possession ninety days after termination of the three years, without institution or proceedings by defendants to dispossess him, may hold over for a year.

Asher v. Johnson. &c.

HAZELRIGG, CHENAULT & HAZELRIGG, AND W. R. RAMSEY,
FOR APPELLANT.

1. A writing by which C. agreed to allow A. to build and oper-
ate a tramway through C.'s field, not to exceed three years, at a
rental of $35 per year is a lease and not a mere license.

2. The relation of landlord and tenant having been created by
the writing, and the tenant having held for a period greater than
ninety days on the third year, was entitled under Ky Statutes, sec.
2295, to hold for the balance of said year.

LOGAN & JEFFRIES, ATTORNEYS FOR APPELLEE.

1. We contend that the writing sued on herein is a license
and not a lease.

2. Even though it be a lease, the land used by appellant was
not farming land, and does not come within the letter or spirit of
section 2295, Ky. Statutes.

### AUTHORITIES CITED.

Black's Law Dictiionary; Bouvier's Law Dictionary; Ander-
son's Dictionary of Law; Washburn on Real Property (6th Ed.),
secs. 619, 835, 836, 843, 844, 845, 846; 18 Am. & Eng. Ency. of
Law, (2d Ed.), pp. 1127, 1130, 1146 to 1150; Sec. 2295 Ky. Stat.;
Wilkins v. Irvin, 33 Ohio St., 138; Waller v. Morgan, 18 B. Mon.,
136; Lowell v. Strahan, 145 Mass., 1; Cluett v. Sheppard, 131
Ill., 636; Malott v. Price, 109 Ind., 22; Ward v. Day, 4 Best &
S., 337; Doe v. Wood, 2 Barn. & Ald., 724; Carr v. Benson, 3 L.
R. Ch. App., 524; Silsby v. Trotter, 29 N. J. Equity, 228; Dark
v. Johnston, 55 Pa., 164; Shepherd v. McCalmont Oil Co., 38 Hunn,
37; Nunnelly v. Southern Iron Co., &c., 94 Tenn., 397; Wood v.
Leadbitter; 13 M. & W., 838; Huff v. McCauley, 53 Penn. St., 209;
Wiseman v. Lucksinger, 84 N. Y., 31.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

The appellant, Asher, was largely engaged in the timber
and lumber business.   He desired to construct a tramroad
about seventeen miles long, for the purpose of hauling his
lumber products to a railroad for shipment.   To do so it
was necessary to secure the right to construct the tramroad
over the lands of the appellee Carnes.   Thereupon Carnes

executed and delivered to the appellant a writing, which reads as follows: "Pineville, Bell county, Ky., May 22, 1900. I, J. L. Carnes, this day agree with A. J. Asher and obligate myself to allow A. J. Asher to enter my field at lower end of meadow on the left side of the creek, coming up creek, and proceed up through field to the upper end of same and out. Asher is to be allowed to build a tramroad through the field, to be operated with tramcars, to be pulled by mules and horses, over which to haul logs, lumber, feed and goods. Asher is not to put any rocks in said road, and is to put a gate at each end of field, and is to pay any damage done to Carnes' land or crops by said gates being left open, and to be allowed to pass up creek to Botner Bingham's land. Consideration for said privilege to be $35 per year. Time of lease not to exceed three years. J. L. Carnes." Asher constructed his tramroad, covering the distance of seventeen miles, which in part was over the land of Carnes mentioned in the contract. He continued to use his tramroad for the purpose of transporting his lumber until September, 1903, when the appellee prevented him from using it over the Carnes land, necessitating the unloading of the cars at the point of entry upon the Carnes land, and hauling it by wagons around it to the tramroad, and again loading it upon the tramcars to be carried to the railroad, thus causing loss and damage to the appellant. The appellant paid the stipulated rent for three years, and avers that he is ready and willing to pay for the year beginning May 22, 1903. The facts detailed are substantially averred in the petition, to which the court sustained a demurrer. To review that action of the court the appeal is prosecuted.

The theory of the appellee is that the writing which Carnes gave Asher is a license, but, if not that, it is an easement for the period of three years, determinable at the will of the ap-

pellee. The appellant claims that it is a lease. Therefore, having remained in possession from the date of its expiration, May 22, 1903, until September, he was, by virtue of the statute, entitled to hold it for one year after the expiration of the lease. 5 Lawson on Rights and Remedies, sec. 2668, defines a license as follows: "A license is an authority given to do some act or acts on the land of another, without giving any estate in the land itself. It differs from an easement in that the latter is a permanent interest, with a right at all times to enter and enjoy it, while the continuance of the former depends on the will of the person who has created it." There is a distinction between an "easement" and a "license," although in some cases it is difficult to see a substantial difference between them. An easement is a privilege in land founded upon a deed or other writing, or upon a prescription. Hazelton v. Putnam, 54 Am. Dec., 158. An easement is a permanent interest in another's land, with the right to enjoy it fully and without objection. An easement may attach to the land, and pass with the dominant tenement, as an appurtenance thereto. The writing in question gave Asher the right to enter upon and take possession of a strip of the grantor's land, and occupy it with his tramroad for a period of three years, at a stipulated rental. Asher had the actual possession of the strip of land so occupied, as completely as he would have had had he raised corn or other products upon it. He enjoyed the profits of the strip occupied by him as much as he would have done if he had cultivated it. Bouvier defines a lease to be "a species of contract for the possession and profits of lands and tenements either for life or for a certain term of years, or during the pleasure of the parties." In Waller v. Morgan, 18 B. Mon., 136, the court said: "To create the relation of landlord and

tenant no particular words are necessary, but it is indis-
pensable that it should appear to have been the intention of
one party to dispossess himself of the premises, and of the
other to enter and occupy as the former himself had the
right to do, pursuant to the agreement between them." In
order that Asher might have become Carnes' tenant, it was
not necessary for him to take possession of Carnes' entire
farm. He could become a tenant on a part of it, as well
as of the whole, depending upon the terms of the contract.
The contract contemplated that he should take possession
of the land for three years at a fixed rental. We conclude
that the contract was a lease, and Asher was Carnes' tenant.
Section 2295, Kentucky Statutes, 1903, reads as follows:
"If, by contract, a term or tenancy for a year or more is
to expire on a certain day, the tenant shall abandon the
premises on that day, unless by express contract, he secures
the right to remain longer. If, without such contract, the
tenant shall hold over, he shall not thereby acquire any right
to hold or remain on the premises for ninety days after said
date, and the possession may be recovered without demand
or notice, if proceedings are instituted within said time. But
if proceedings are not instituted within said time, then none
shall be allowed until the expiration of one year from the
day the term of tenancy expired; and at the end of said year
the tenant shall abandon the premises without demand or
notice, or stand in the same relation to his landlord that he
did at the expiration of the term or tenancy aforesaid; and
so from year to year until he abandons the premises, is
turned out of possession or makes a new contract." Asher
having remained in possession of the land for ninety days
after the expiration of his lease, he was entitled to remain
for one year thereafter. It is suggested that the statute was
intended for the benefit of the tillers of the soil, as it would

be supposed that if the tenant remained on the premises during that period he would have pitched his crop, therefore should not be disturbed in the enjoyment of the premises for the year ensuing the expiration of the lease. This may have been the consideration which induced the enactment of the statute, but its terms are broad enough to cover other leases. It applies to a case where a house is rented without a foot of ground attached to it susceptible of cultivation. It necessarily applies to the case under consideration. In our opinion the court erred in sustaining the demurrer to the petition.

The judgment is reversed for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.