## Patchen Wilkes Stock Farm Company v. Walton

(Decided November 16, 1915.)

### Appeal from Fayette Circuit Court.

1. Animals—Agisters' Liens.—Agistment is a species of bailment and cannot arise where the animals were not in the possession of the person asserting the agister's lien. Where the owner of animals grazed them on the lands of a tenant, the landlord could not claim an agister's lien thereon.

2. Landlord and Tenant—Leases.—A lease is a conveyance of real property which operates to divest the owner for a time of a certain estate therein, leaving him only the reversion.

HARRY B. MILLER and H. E. ROSS for appellant.

MATT S. WALTON and RIVES & SHANNON for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

J. F. Walton leased to W. E. Bean certain lands in Fayette County for grazing purposes, the term to begin March 15, 1913, and to continue for one year, the rental being $200 per month, payable on the 15th days of April, May, June, July, August, September, October and November, and $300 per month thereafter for the remaining four months.

Bean leased this land from Walton for the purpose of grazing thereon certain brood mares, the property of the Patchen Wilkes Stock Farm Company, with which

corporation he had a contract of agistment. The mares were grazed on the premises so leased from March 15, 1913, to October 15, 1913; and Bean paid to Walton the rentals due under the lease up to July 15, 1913 (less the sum of $64.20), and thereafter he made no further payments.

On October 22, 1913, Walton sued Bean and the Stock Farm Company in the Fayette Circuit Court for the rentals due under the lease to October 15, 1913, amounting to $664.20, the company being joined as a defendant upon the theory that Bean leased the lands as its agent. By an amended petition, it was charged that the defendant corporation (by its president, Stokes) had agreed to pay plaintiff for the grazing of the mares.

The cause was submitted on July 11, 1914, and on July 15, 1914, the order of submission was set aside, and plaintiff filed a second amended petition, wherein he sought to assert an agister's lien on the mares, which it seems were at that time on Walton's premises under a contract between him and the corporation direct. An attachment was a few days later sued out.

The chancellor rendered a judgment in plaintiff's favor against the defendant corporation, in the sum of $664.20 and sustained the attachment. The defendant, Patchen Wilkes Stock Farm, appeals.

It appears from the evidence that Stokes, the president of the Stock Farm Company, promised Walton to make such checks as were sent to Bean for the board of the mares, payable to both Bean and Walton so that the latter could protect himself in the matter of the rentals due him from Bean under his lease, although Stokes claims this promise was qualified to the extent that such checks were to be so sent only so long as the Stock Farm Company was indebted to Bean. In any event, the proof fails to show any promise of the defendant corporation to pay the rentals provided for in the lease from Walton to Bean, and it is therefore unnecessary to discuss whether, as appellant contends, such promise is within the statute of frauds. Appellee upon this appeal, in fact, abandons that theory of the case, and rests his right of recovery purely upon the ground that he was entitled to an agister's lien.

It appears from the record that the Stock Farm Company did, in fact, send checks for the board of the mares, made payable to the order of Bean and of Walton, up to

August 15, 1913, after which date the company refused to make further payments to Bean, claiming that he was indebted to it. The mares, however, remained on the premises leased by Walton to Bean, and the Stock Farm Company knew this. Bean made no further payment of rentals under the lease.

Appellee states in his brief (though it does not otherwise appear) that the chancellor in considering the case became convinced that in view of the fact that the company had sent checks for the board of the mares, made payable in the manner above mentioned, and then ceased to make further payments to Bean, but left its mares "on Walton's premises," such act was equivalent to the placing of the mares thereon by the corporation itself, and that Walton was therefore entitled to recover under Kentucky Statutes, section 2500, giving liens to agisters.

This section reads as follows: "All owners and keepers of livery stables, and persons feeding and grazing cattle for compensation, shall have a lien upon the cattle placed in such stable or put out to be fed or grazed by the owner or owners thereof, for their reasonable charges for keeping, caring for, feeding and grazing the same. And this lien shall attach whether the cattle are merely temporarily lodged, fed, grazed and cared for, or are placed at such stables or other place or pasture, for regular board; but it shall be subject to the limitations and restrictions as provided in case of a landlord's lien for rent."

1. A lease is a conveyance of real property and it divests the owner for a time of a certain estate therein, leaving in him the reversion. Mattingly's Exr. v. Brents, 155 Ky., 571, 159 S. W., 1157.

Walton having leased the premises in question to Bean for the term of one year beginning March 15, 1913, and ending March 15, 1914, was not in possession of the premises during the period from August 15, 1913, to October 15, 1913. In intendment of law, the lands so leased were in the possession of Bean, the lessee, and the landlord could not be entitled to an agister's lien on the brood mares thereon grazed. He was not "feeding or grazing" them; Bean was doing this.

Agistment is a species of bailment, and cannot arise where the animals were not delivered into the possession of the person who asserts the agister's lien; and

as the tenant was in possession of the premises, the landlord was not in the possession of the mares thereon grazed. Cotton v. Arnold, 95 S. W., 280, 118 Mo. App., 596.

It follows, therefore, that the chancellor erred in holding Walton entitled to an agister's lien on the mares in question and in rendering judgment in his favor against the defendant Stock Farm Company.

The judgment is reversed, with directions to enter a judgment dismissing the petition as to the defendant company.