Cordell **CAMPBELL** et al., Appellants,

v.

Paul A. **HENSLEY** et al., Appellees.

Court of Appeals of Kentucky.

Feb. 13, 1970.

Alva A. Hollon, Hollon & Hollon, Hazard, for appellants.

Calvin N. Manis, Hazard, for appellees.

REED, Judge.

This dispute involves the leasing of a filling station. The appellants, as lessors, brought this action against the appellees, as lessees, for unpaid rent. The lessees defended on the ground that the lessors had previously leased the same property to another party for the same term as was provided in the lease on which the current action is based; the lessees also counterclaimed for rent payments previously made by them to the lessors under this later lease.

The trial court dismissed the lessors' action and also dismissed the lessee's counterclaim. The lessors appeal from that part of the judgment declaring their lease void and refusing recovery for unpaid rent. The lessees cross-appeal from that part of the judgment denying their demand for refund of rent payments that they had made pursuant to the provisions of the lease upon which this action is based. We reverse that portion of the judgment denying recovery by the lessors and affirm that part of the judgment refusing the relief sought by the lessees.

The lessors inherited the property which is the subject of the lease in controversy from their father, who had owned it for several years prior to his death. The lessees are in the oil and gasoline distribution business and are known as local "con-signees" of Texaco Oil Company. This Texaco local distributorship was owned and operated by Mr. Ernest Combs for a considerable period of years prior to his death. The lessees in this action inherited the gasoline distributorship from Mr. Ernest Combs.

For several years prior to the inheritance by the lessors and lessees of the interests concerned herein, Ernest Combs, the Texaco Oil Company, and the lessors' father, had an oral arrangement whereby Texaco paid the owner of the filling station one cent per gallon for gasoline pumped thereon and Combs, Texaco's local distributor, controlled the possession of the premises, selected and controlled the operator of the filling station thereon, and paid to the owner of the filling station property the sum of $155 per month as rent.

Upon Ernest Combs' death, his son-in-law, Paul Hensley, became manager of the local Texaco distributorship. The owner of the filling station property had also died and the present lessors, his children, had inherited his property. Hensley, Texaco, and the present lessors decided that the prior oral arrangement should be reduced to writing. With Hensley's full knowledge, encouragement and consent, the present lessors entered into a printed form lease with Texaco on May 29, 1964; by the terms of this document, Texaco agreed to pay, as it had done for the past several years, the rental of one cent per gallon on the gasoline pumped and sold at the filling station. The document described Texaco as the lessee and granted to Texaco an option to purchase the property on certain terms and conditions not pertinent here. The term of this lease was for five years with an option to renew for an additional five years on certain terms and conditions.

Thereafter, on July 16, 1964, a second lease was executed between the present lessors and the present lessees. It is stipulated that all parties to the second lease knew of the existence of the prior Texaco lease. By

the terms of this second lease, the present lessees agreed to pay as rent for their occupation and control of the filling station the sum of $155 per month, the same amount that they and their predecessor had paid for several years in the past. This later lease was made subject to Texaco's option to purchase and also undertook to give the present lessees a right of first refusal if the lessors desired to sell the property to any party other than Texaco.

The lessees continued to pay the monthly rental provided in this second lease document for a period of ten months and then refused to pay further, although the term of their lease remained unexpired. The term of this second lease was for five years from July 1964, with privilege to extend and renew the term for another five years under certain specified conditions.

Hensley testified that he refused to pay further rent when he learned that his business was losing money in the operation of the filling station. Texaco paid the distributorship one cent per gallon for the gasoline delivered to the station. The distributorship controlled the occupancy and possession of the station and selected the operator who in turn paid to the distributorship one cent a gallon on gasoline delivered and pumped for sale. Hensley testified that upon discovery by him that the arrangement was not economically feasible, principally because the distributorship had to pay the owner of property adjacent to the filling station the sum of $175 per month for the use of a parking lot, he consulted legal counsel who advised him that the second lease entered into between the parties was void. Therefore, when the lessors brought this action for the unpaid rent, the lessees defended on the basis that the lease was void and that they were entitled to recover back from the lessors the ten monthly rental payments which they had paid during the period of the lease.

The trial court reasoned that a lease is a conveyance of an estate in realty and that it divests the owner for a given time of a certain estate in the land, leaving in the owner only the right of reversion at the expiration of the grant. The trial judge cited the case of Moore et al. v. Brandenburg, 234 Ky. 400, 28 S.W.2d 477, and upon its authority declared that the May, 1964, lease from the present lessors to Texaco divested them of the estate in the land which they subsequently undertook to lease to the present lessees. Upon this basis, the second lease was adjudged void. Nevertheless, the trial court held that the lessees could not recover the payments theretofore made because they were "in the nature of a gift."

While we are of the opinion that the trial court was in error from a rationale based either on the law of contracts or on the law of landlord and tenant, we will confine our discussion to the lease relationship since that was the foundation of the defense made by the lessees.

The Moore case held that since a lease is a conveyance of an estate in realty, a document evidencing such conveyance must comply with formal requirements recited in that opinion or the document simply will not be regarded as a lease. The opinion, however, expressly recognizes the rule that where the relationship of landlord and tenant exists, a tenant in possession is estopped to deny the title of his landlord. The lessees argue that no element of estoppel is present because it was not pleaded as a special defense. This, of course, is patently without merit. This was a suit by a landlord to recover unpaid rent under a lease. It is the general rule that want of title on the part of the landlord is not a defense to an action for rent particularly in those instances where the defendant is a tenant in undisturbed possession of the premises. 32 Am.Jur., Landlord and Tenant, Sec. 123 pp. 125, 126.

It is clearly established, in this case, that the tenant in undisputed possession of the use and occupancy of the premises has always been the gasoline distributorship business operated by the present lessees. It is

admitted that they are receiving gallonage payments from the operator of the station whose occupancy is controlled entirely by the lessees.

The lessees, tenants in possession, encouraged through Hensley the lease which the lessors executed with Texaco. Texaco, however, did not enter into possession or occupancy of the premises. The lessees entered into the lease which is the foundation of this action with full knowledge of the prior contract between the lessors and Texaco. They were in undisturbed possession of the premises at the time of the execution of the lease sued upon and have always remained in undisturbed possession of the premises. An attorney employed by them drew the later lease.

■ We need not further explore other ramifications of various transactions such as the effect of concurrent leases, because that question is not presented in this case. Suffice it to say that evidence of concurrent leases does not in itself necessitate a result by which either lease would be declared void. See 32 Am.Jur., Landlord and Tenant, Section 93, pp. 101, 102.

■■ A tenant who enters into a lease with full knowledge of the facts and is in full undisturbed possession of the premises at the time an action for unpaid rent is instituted and prosecuted may not assert want of title to the premises on the part of his landlord as a defense—whether the question of title is concerned with lack of the type of titular interest as would be represented in the execution and delivery of a prior lease for the same term on the same premises or otherwise. It follows, therefore, that the lessors were entitled to recover the unpaid rent and the lessees were not entitled to recover the rental payments previously made.

Therefore, the judgment is reversed on the original appeal and affirmed on the cross-appeal with directions to enter a new judgment in accordance with this opinion.

All concur.