# Fife et al. v. Lockhart et al.

Feb. 7, 1941.

Jean L. Auxier for appellants.

J. E. Childers for appellees.

Opinion of the Court by Judge Fulton—Affirming.

This appeal is from a judgment entered on a directed verdict at the conclusion of the plaintiff's testimony in an action of ejectment. The issue, as developed by the pleadings and the evidence, resolved itself into a question of ownership of a parcel of land containing less than one-tenth of an acre.

The land in dispute is in the shape of a trapezium and is located at the junction of Ratliff's Creek and another small creek emptying into it, known as Road Fork of Ratliff's Creek, the dimensions in feet, being 34 x 25 x 23 x 37. Ratliff's Creek runs from east to west and Road Fork, for some little distance, runs almost parallel to it and then turns at a sharp angle and runs almost due north, emptying into Ratliff's Creek. The land in controversy is between the two creeks, three of the sides of the trapezium being formed by the creeks,

the fourth, and west, side being along a line claimed by the appellant to have been the line of an old rail fence constructed as the division line by appellee's predecessor in title and running from one creek to the other.

The land owned by the respective parties, adjoining the land in controversy, goes back to a common source of title, Francis Edmonds. After his death his widow and heirs agreed on a division but before deeds were made one of the heirs sold his part to a predecessor in title of appellee and deed was made to him in the year 1894. Deeds to the other heirs were made in the year 1901 and appellant holds under one of these deeds.

A surveyor, who testified for appellant, stated that the land in controversy was within the limits of the deed boundary of F. T. Booze, appellee's predecessor in title, and there was no evidence to the contrary. This being true, it is self-evident that appellant has no record title to the land and must recover, if at all, on the strength of adverse possession. Ennis v. Billingsly, 264 Ky. 254, 94 S. W. (2d) 669.

The evidence is wholly insufficient to show that the appellant had the disputed land under inclosure and there is no pretense that it was in possession by cultivation or other use or occupancy. It is true that a number of witnesses attempted to state that the land was inclosed by appellant's fence but it appears from their testimony that they only meant that there was an inclosure by reason of appellant joining to appellee's fence by means of water gaps and it further seems from their testimony that the character of inclosure referred to by them was no more of an inclosure by the appellant than by the appellee. In any event although the testimony may be considered to show an inclosure by fence, it falls short of showing such inclosure for more than 15 years, the necessary period to confer title by adverse possession.

It is insisted for appellant however, that the evidence shows that appellant's predecessor in title erected the old rail fence referred to, running from one creek to the other, which excluded the land in controversy from his boundary and that the fence was agreed to be the line. In the attempt to prove this, evidence was introduced that the heirs of Francis Edmonds agreed on this as the line. Such agreement, however, could not

affect the appellee since there was no evidence that his predecessor in title, F. T. Booze, was a party thereto. As a matter of fact the deed to Booze was executed some seven years before the other heirs of Francis Edmonds received their division deeds.

It is insisted for appellant, however, that appellee and his predecessors in title acquiesced for many years in the practical location of the line along the old rail fence as claimed by appellant and that the case falls within the rule laid down in Peters v. Hendricks, 225 Ky. 722, 9 S. W. (2d) 1076, and the many cases cited therein, to the effect that where a fence has long been recognized by the parties as a division line, each holding, claiming, cultivating and controlling the land up to the fence on his side for more than 15 years, the fence would be treated as the division line even though it might not in fact be the true line. This case is to be distinguished from that line of cases, however, in that the evidence does not show that appellee and his predecessors in title recognized the fence as the line and that appellee claimed, cultivated or controlled up to this fence—there was no dispute between the parties which was settled by building the fence and no agreement between the adjoining land owners that it was the division line. The only use or occupation of the disputed land shown by appellee is that her son constructed a bridge across Ratliff's Creek, adjoining the disputed land, and crossed over the disputed land and this bridge in going to and from his home on her farm. This use continued only for a few months. The present case is more like the case of Ennis v. Billingsly, supra, in which the creek was the correct record boundary but the defendant had constructed his fence some distance from the creek and the plaintiff claimed the land between the fence and the creek, contending that the fence was the line. We held to the contrary because the evidence failed to show the fence was recognized as the dividing line and because the plaintiff failed to establish the requisite adverse possession.

By an amended petition appellant alleged that the appellee by certain acts of his had caused the Road Forks of Ratliff's Creek, which is the southern and eastern boundary of the land in dispute, to shift further east but the evidence wholly failed to sustain this allegation. However, some evidence was introduced that

314

appellant's son, in constructing the bridge above referred to and making a fill therefor, had caused the creek to shift eastwardly, thereby taking from her land and adding to appellee's. The evidence further shows, however, that when this bridge washed out the creek shifted back approximately to where it was originally located. We are of the opinion that the evidence as to any substantial shifting of the creek from its original bed was so unsatisfactory and so indefinite that the trial court was justified in refusing to submit to the jury any issue on this question. As appellant's counsel frankly stated in the brief, reliance upon the doctrine of sudden change was small.

Judgment affirmed.